[Cite as *State v. Burgess*, 2013-Ohio-4691.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                            |   | JUDGES:                     |
|----------------------------|---|-----------------------------|
| STATE OF OHIO              | : | Hon. W. Scott Gwin, P.J.    |
|                            | : | Hon. John W. Wise, J.       |
| Plaintiff-Appellee         | : | Hon. Craig R. Baldwin, J.   |
|                            | : |                             |
| -vs-                       | : |                             |
|                            | : | Case No. 2013CA00070        |
| FRANCESCA BURGESS          | : |                             |
|                            | : |                             |
| Defendant-Appellant        | : | O P I N I O N               |


CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County Court of Common Pleas, Case No. 2012CR0064

JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    October 21, 2013

APPEARANCES:

For Plaintiff-Appellee

JOHN FERRERO
Stark County Prosecutor
BY: FREDERIC R. SCOTT
110 Central Plaza South
Ste. 510
Canton, OH 44702

For Defendant-Appellant

SAMUEL FERRUCCIO, JR.
JEFFRY SERRA
220 Market Avenue South
400 Huntington Plaza
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant Francesca Burgess ["Burgess"] appeals the March 21, 2013 entry of the Stark County Court of Common Pleas ordering her to pay restitution in the amount of $72, 535.00.

*Facts and Procedural History*

{¶2} Burgess was formerly a manager and bookkeeper for Stark Mold and Pattern, Inc., a small manufacturer in Canton, Ohio. In October 2010, the company president, Paul Dougherty, became aware of discrepancies in the company's accounting. After further investigation by law enforcement officials, Burgess was indicted by the Stark County Grand Jury on criminal charges stemming from her theft of company funds as a continuing course of conduct between May 2003 and October 2010.

{¶3} On March 2, 2012, Burgess pled no contest to one count of grand theft (R.C. 2913.02(A)(1) and/or (A)(2) and/or (A)(3)), a felony of the fourth degree, and one count of tampering with records (R.C. 2913.42(A)(1)(B)(3)(c)), also a felony of the fourth degree. Thereafter, the trial court found Burgess guilty of both offenses. See Judgment Entry, March 13, 2012.

{¶4} On April 4, 2012, Burgess returned to court for sentencing. On April 12, 2012, the trial court sentenced her to four days in jail, with three years of community control. One of the conditions of community control was restitution in an amount to be determined, with the provision that appellant "shall receive credit for $9,400 already paid to [the] victim." Sentencing Entry, April 12, 2012, at 6. A restitution hearing was therein ordered for May 16, 2012. *Id.*

{¶5} The court thereafter duly held a hearing to determine the amount of restitution to be paid by Burgess. On May 24, 2012, the trial court issued a judgment entry addressing restitution as follows:

> This matter comes before the Court for a determination of restitution. After hearing the evidence in the within matter, the Court orders restitution in the amount of Seventy-two Thousand Five Hundred Thirty-five and no/100 Dollars ($72,535.00). From this, the Court would deduct any amounts that have been pre-paid by the defendant as part of the criminal case. The Court, therefore, orders that restitution will be set at Seventy-two Thousand Five Hundred Thirty-five and no/100 Dollars ($72,535.00) minus any amount that has been re-paid during the pendency of the Court matter."

Judgment Entry, May 24, 2012.

{¶6} On June 21, 2013, Burgess filed an appeal. This Court dismissed that appeal and remanded the case to the trial court for the issuance of a final conviction, sentencing and restitution entry in compliance with *State v. Baker*, 119 Ohio St.3d 197, 201, 2008-Ohio-3330, 893 N.E.2d 163 and *State v. Lester,* 130 Ohio St.3d 303,  2011-Ohio-5204, 958 N.E.2d 142. *See State v. Burgess*, 5th Dist. Stark No. 2012 CA 00119, 2013-Ohio-234. On March 21, 2013, the trial court issued a judgment entry in compliance with this Court's remand.

*Assignments of Error*

{¶7} Burgess raises two assignments of error,

{¶8} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THE APPELLANT TO PAY RESTITUTION IN THE AMOUNT OF $63,143.57 AS SET FORTH IN THE TRIAL COURT'S JUDGMENT ENTRY DATED MARCH 21, 2013.

{¶9} "II. THE TRIAL COURT ERRED BY FAILING TO ESTABLISH THE AMOUNT OF RESTITUTION TO A DEGREE OF CERTAINTY, WHICH REFLECTS A REASONABLE RELATIONSHIP TO THE ACTUAL LOSS SUFFERED."

I & II

{¶10} Burgess' first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together. In her two Assignments of Error, Burgess contends the trial court erred or abused its discretion in ordering Burgess to pay certain restitution.

{¶11} R.C.2929.18 states in pertinent part:

(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the

restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

{¶12} Evid.R. 101(C)(3) specifically provides that the Ohio Rules of Evidence, other than with respect to privileges, do not apply to miscellaneous criminal proceedings including sentencing. *State v. Cook*, 83 Ohio St.3d 404, 425, 700 N.E.2d 570(1998); Evid.R. 101(C)(3). Ohio appellate courts have ruled that because the rules of evidence do not apply to sentencing, they also do not apply to evidentiary hearings concerning restitution by offenders to victims of crimes. *State v. Riley*, 184 Ohio App.3d 211, 2009–Ohio–3227, 920 N.E.2d 388, ¶28 (6th Dist.); *State v. Potts*, 7th Dist. Harrison No. 07 HA

4, 2008–Ohio–643, ¶11; *State v. Tuemler*, 12th Dist. Warren No. CA2004–06–068, 2005–Ohio–1240, ¶17. Consequently, the trial court was not restricted by the Rules of Evidence, including the prohibition on hearsay, in determining the amount of a restitution order. Moreover, R.C. 2929.18(A)(1), the statute governing restitution, expressly permits the trial court to consider an amount recommended by the victim to be used in determining the amount of restitution owed by the offender.

{¶13} In the case at bar, the trial court heard from Paul Dougherty, President and co-owner of Stark County Mold and Pattern. Dougherty testified that Burgess was paid on an hourly basis and scheduled to work three days a week, for a total of 24 hours. In addition to pay, she was given flextime, a company cell phone, a gas card and health insurance for her and her family.

{¶14} When the theft was discovered, Burgess was fired and Dougherty followed her home to retrieve the company laptop computer where Burgess kept the QuickBooks program of payroll and company records. When she was left alone, however, she started erasing records. The Company was able to recover some of them but most of them were not recoverable because of Burgess' action. Specifically, Burgess removed the records on the electronic funds transfers (EFT).

{¶15} Dougherty then went through the bank records, cancelled checks, bank statements, transfers and EFTs and was able to compile an incomplete list of the moneys taken by Burgess. Dougherty thought there was more money taken, but it was difficult and time consuming to run a business and do an audit at the same time, Dougherty spent 300 hours trying to conduct an audit.

{¶16} Besides the unauthorized charges to the Company credit card, she took money through paying herself unauthorized bonuses, unauthorized extra vacation days, falsified timecards, and wrote checks for postage and office supplies. She even went so far as to have Dougherty write her a payroll check and then go to his brother, the vice - president with another payroll check claiming Dougherty forgot to write it.

{¶17} Dougherty compiled a list of the thefts and it was presented to the Court as State's Exhibit 1. The total of the theft entries compiled by the Company was $72,576.35. The trial court ordered Burgess to repay that amount less any money she had previously repaid.

{¶18} Burgess offered no evidence that would refute the testimony of Dougherty or the exhibit he prepared outlining the various methods she used to defraud the company.

{¶19} We find this evidence is sufficient to show the amount of actual economic loss with reasonable certainty.

{¶20} Burgess next argues that the trial court abused its discretion by basing its restitution award on conduct not contained in the indictment or bill of particulars. Burgess in essence argues that the unauthorized paycheck issue was an unfair surprise and the she never would have pleaded no contest to the charge of grand theft and agreed to restitution knowing that it included her paychecks.

{¶21} In *State v. Lalain*, the Ohio Supreme Court held,

> A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or

receipts indicating the cost of repairing or replacing property, and other information, but the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense.

_ Ohio St.3d_, 2013-Ohio-3093, 2013 WL 3751258(OH Sup. Ct. July 17, 2013). In that case, the appellant argued,

[T]hat unless there is a specific agreement to the contrary, a restitution order cannot exceed the maximum property value that corresponds to the degree of the theft conviction and the trial court here therefore lacked authority to order restitution in an amount exceeding $4,999.99 on a conviction for fifth-degree-felony theft. He maintains that the trial court allowed Aero-Instruments to recover expenditures that were not the direct and proximate result of his crime, but rather the company had incurred those costs to investigate the theft, to value the property, and to prepare for litigation.

2013-Ohio-3093, ¶ 17. The Supreme Court noted,

In addition, we recognize that the amount of restitution is not correlated to the degree of the theft offense. For example, R.C. 2913.02(B)(5) states, "If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree," regardless of the value of the motor vehicle. A trial court choosing to order restitution in a case of grand theft of a motor vehicle is

not restricted to the value corresponding to a fourth-degree felony and may instead award restitution pursuant to R.C. 2929.18(A)(1).

2013-Ohio-3093, ¶24. In the case at bar, we note that the damages are not greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense. Therefore, the trial court can award them.

{¶22} In addition, we note the purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E. 2d 781, 784(1985). It also acts to "inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." *State v. Fowler*, 174 Ohio St. 362, 364, 189 N.E.2d 133, 134(1963). However, a bill of particulars "is not designed to provide the accused with specifications of evidence or serve as a substitute for discovery." *Sellars* at 171, 478 N.E. 2d 781. Consistent with this purpose, Crim.R. 7(D) allows amendment of a bill of particulars "before, during, or after a trial," provided that "no change is made in the name or identity of the crime charged." See, also, *State v. Brown*, 99 Ohio App.3d 604, 610, 651 N.E.2d 470, 474(10th Dist. 1994).

{¶23} In the case at bar, the indictment and bill of particulars provided Burgess with notice of the substance of the theft charge. Discovery provided by the state provided her with additional facts concerning the essence of the state's allegations. Specifically, the indictment alleged that Burgess knowingly obtained or exerted control over property belonging to Stark Mold and that the value of said property was more than $5,000 but less than $100,000.

{¶24} The bill of particulars gave Burgess further details of the crimes alleged in the indictment,

> Defendant worked as an officer manager and bookkeeper at Stark Mole & Pattern Company, She developed a scheme by which she electronically transferred company funds to pay off her own debts, including credit card charges. She also cashed checks to herself and recorded them in the company's bookkeeping software as funds used to pay company vendors. Through these and other schemes, defendant took approximately $66,000 from the company without its consent.

{¶25} On February 14, 2012, Burgess was provided with the reports of the investigation of the Stark County Sheriff's Office. These details including the estimate by the victim-employer that she had stolen through various schemes over $60,000. Indeed, she was notified that several of the checks showed that she was paid twice for the same pay period by having the co-owners write her checks for the same pay period. She was also notified that the allegations included that she wrote checks for days she did not work including holidays and weekend, and wrote herself checks for bonuses to which she was not entitled. Indeed, she was provided with a spreadsheet prepared by the victim that showed extra hours on paychecks she did not work, Response to Request for Discovery, Feb. 14, 2012.

{¶26} Burgess has failed to demonstrate that her lack of knowledge actually prejudiced her in her ability to fairly defend herself. *State v. Chinn,* 85 Ohio St.3d 548, 570, 709 N.E.2d 1166, 1183, 1999–Ohio–288. We find in the case at bar the bill of particulars as provided by the state, together with the discover provided to Burgess

before she entered her plea in no way precluded or otherwise hindered Burgess from effectively presenting her defense. Burgess was put on notice of the allegations that she was paid twice for the same pay period; that she wrote checks for days she did not work including holidays and weekend, and wrote herself checks for bonuses to which she was not entitled. Indeed, she was provided with a spreadsheet prepared by the victim that showed extra hours on paychecks she did not work.

**{¶27}** Burgess presented no evidence to the contrary. Therefore, the record simply does not support Burgess' claims that she lacked specific information as to the particular conduct constituting the offenses charged. *Chinn,* supra. It is clear, therefore, that Burgess suffered no prejudice as a consequence of the wording of the indictment or the bill of particulars.

**{¶28}** Burgess' first and second assignments of error are overruled.

**{¶29}** For the foregoing reasons, the judgment of the Court of Common Pleas for Stark County, Ohio is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. CRAIG R. BALDWIN

WSG:clw 1001

[Cite as *State v. Burgess*, 2013-Ohio-4691.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| FRANCESCA BURGESS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2013CA00070 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas for Stark County, Ohio is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. CRAIG R. BALDWIN